MARY'S OPINION HEADING 



 NO. 12-02-00207-CV



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


LEWIE BYERS,
§
 APPEAL FROM THE 114TH

APPELLANT




V.
§
 JUDICIAL DISTRICT COURT OF


DAVID DEWHURST, COMMISSIONER

OF THE GENERAL LAND OFFICE

AND TEXACO EXPLORATION &

PRODUCTION, INC.,

APPELLEE
§
 SMITH COUNTY, TEXAS

 

MEMORANDUM OPINION


 Lewie Byers ("Byers") appeals from the trial court's order granting pleas to the jurisdiction
filed by David Dewhurst, Commissioner of the General Land Office ( the "Commissioner") and
Texas Exploration and Production, Inc. ("Texaco") (collectively "Appellees"). Byers raises eight
issues on appeal relating to the trial court's jurisdiction and the admissibility of evidence. We
reverse the order of the trial court and remand the cause for trial de novo.


Factual and Procedural Background


 On September 20, 1996, Byers filed a vacancy application with the General Land Office (the
"Land Office" or "the agency") to purchase or lease vacant land in Smith County. The Land Office
accepted the application on October 14, 1996, assigned it file number SF16546, and required Byers
to pay $30,000 as a deposit to cover the cost of a survey and other expenses. The agency appointed
Jerry Goodson ("Goodson") to conduct the survey.

 On July 30, 1999, without hearing, the Commissioner entered a final order denying Byers'
vacancy claim based on Goodson's survey that showed that no vacancy existed. Byers appealed to
the District Court of Smith County asking the court to remand the matter to the Commissioner with
instructions to consider a survey prepared for Byers by Don Hickey. The district court remanded the
application to the Land Office for consideration of the Hickey survey. The Commissioner
reconsidered the application with the benefit of both surveys, once again concluded that no vacancy
existed, and issued a final order denying the vacancy. Byers again appealed to the district court. As
a result of court-ordered mediation, the Commissioner agreed to refer the application for a contested
hearing before the State Office of Administrative Hearings ("SOAH"). On the joint motion of the
Commissioner and Byers, the court on December 19, 2000, remanded the matter to the
Commissioner for a contested case hearing for the presentation of "the additional evidence identified
in the joint motion." The district court's order abated the judicial proceeding "until such time as
final administrative action has been taken following subsequent proceedings at the administrative
level."

 The Commissioner referred the matter to the SOAH, but before a date was set for the
contemplated contested hearing, the 77th Legislature rewrote the portion of the Texas Natural
Resources Code governing the handling of vacancy applications. (1) The amending legislation
provided, inter alia, that hearings under the subchapter were no longer to be contested case hearings,
that the Administrative Procedure Act, Tex. Gov't Code Ann. ch. 2001 (Vernon 2000), would no
longer govern vacancy application proceedings, and that on appeal, the district court shall conduct
a de novo review of the Commissioner's final order determining that a vacancy does or does not
exist. The decision to grant a hearing on an application is solely within the discretion of the
Commissioner, and, if granted, the hearing is not a contested case hearing and is not subject to the
Administrative Procedure Act.

 In August of 2001, Byers received notice that the hearing on his application was set for
September 17, 2001, sixteen days after the effective date of the amendments. The notice stated the
hearing would be a contested case under the Administrative Procedure Act, language consonant with
the old law.

 Apparently anxious that there be no question that the hearing on remand and any appeal were
to be governed by the law as amended, Byers objected to the hearing set for September 17, 2001. 
The hearing was abated, and Byers, on October 15, 2001, moved the District Court of Smith County
to modify the December 19 order of remand to expressly state that further proceedings were to be
governed by the amended statutes. On December 4, 2001, the judge modified her order to specify
that the application was remanded to the General Land Office for "further processing" pursuant to
the amended statutes.

 Instead of proceeding with or without hearing to a final determination of Byers' vacancy
application which it had accepted in 1996, without notice to Byers, it considered the application to
have been newly filed as of the date of the district court's December 4, 2001 order, and assigned it
a new number. Four months later, on March 5, 2002, the agency notified Byers not that his claim
of vacancy had been denied, but that his now newly-numbered and dated application had been
rejected and the matter closed. No such new application had been submitted by Byers. The agency
gave the following reasons for the rejection of the "new" application:


 First, the vacancy alleged in the application is subject to an earlier subsisting application, i.e., the one
originally filed by you on September 20, 1996 and assigned file number SF16546. See Tex. Nat. Res.
Code § 51.172(a)(5)(C). Second, the General Land Office is unable to locate the vacant land
described in the Application on the ground. A survey conducted by Jerry Goodson was accepted by
the General Land Office; the survey establishes that the vacant land described in the Application does
not exist on the ground. See Tex. Nat. Res. Code § 51.177(c)(2). Third, the application has material
omissions because it does not provide documentary proof for an assertion of good-faith claimant
status. See Tex. Nat. Res. Code §§ 51.176(a)(4) and 51.178(b).



 There is no right of appeal from an administrative order absent express statutory authority
unless the order violates a constitutional provision or adversely affects vested property rights. 
Continental Cas. Ins. Co. v. Functional Restoration Assoc., 19 S.W.3d 393, 397 (Tex. 2000); see
also Stone v. Texas Liquor Control Bd., 417 S.W.2d 385, 385-86 (Tex. 1967). The applicable
statute provides for de novo review of a final order of the Commissioner determining that a vacancy
does or does not exist, but it makes no provision for an appeal from the rejection of the application. 
See Tex. Nat. Res. Code Ann. §§ 51.186-.188 (Vernon Supp. 2003).

 Byers appealed to the Smith County District Court that had abated the judicial proceeding
pending the agency's vacancy determination contending, inter alia, that the primary reason given for
the rejection of his application, that "a survey conducted by Jerry Goodson . . . establishes that the
vacant land described in the application does not exist on the ground," is tantamount to a final
determination that no vacancy exists. Therefore, he maintained, the court should conduct a de novo
review of the agency's determination that no vacancy exists. Appellees argued that the letter of
March 5, 2002, was "on its face" a rejection of his application from which there is no appeal. The
district court concluded it had no jurisdiction.


Contentions of the Parties (2)


 On appeal to this court, Byers reiterates his contention that whatever the label given it by the
agency, the substance and function of the notice of rejection determine its classification. The letter
of March 5, 2000 purports to reject an application of December 4, 2001. Byers argues that his only
application for vacancy was the application of September 20, 1996, which was accepted on
October 14, 1996. He points out that the reasons given for the rejection of the fictitious application
are not statutory reasons for the rejection of an application or they did not exist when his application
was made and accepted. The agency had twice finally determined that no vacancy existed, and, on
appeal, the Smith County District Court had remanded the matter to the agency for further
consideration. The last remand was for "further processing", which Byers argues meant a final
determination since that was the only administrative step remaining. In Byers' view, the agency's
action was a transparent attempt to deny him a de novo appeal.

 Appellees argue that if the Commissioner determines that the land is not vacant, he is
required to endorse the file "Not Vacant Land" and notify the parties. Since the Commissioner
apparently did neither in this case, the March 5, 2002 letter cannot be a final determination that the
land claimed to be vacant is not vacant land. Since no appeal lies from the rejection of an
application, the district court, in their view, correctly concluded that it lacked jurisdiction.

 Byers contends that the endorsement of "Not Vacant Land" on the file and notification of the
parties are mere ministerial duties, the failure in whose performance does not alter the classification
of the letter. The other reasons cited for the application's rejection, he argues, are totally spurious. 
The fictitious nature of the December 4, 2001 application is demonstrated by the first reason given
for its rejection, that it was "subject to" his 1996 application that had been accepted. Moreover, it
is undisputed that the "first reason" is not a statutory basis for the rejection of an application.


Applicable Law


 Despite several significant changes made in 2001, the amended Natural Resources Code
preserves a very similar plan for handling vacancy applications. Under both the old and new law,
the rejection or acceptance of a vacancy application was intended to be a threshold matter. Compare
Tex. Nat. Res. Code Ann. § 51.174 (Vernon 2000) and Tex. Nat. Res. Code Ann. § 51.177
(Vernon Supp. 2003). Two of the three statutory reasons for rejection relate to incomplete or
improperly completed applications. Tex. Nat. Res. Code Ann. § 51.177(c)(1), (2) (Vernon Supp.
2003). Under the third ground, an application may be rejected if the land described as vacant has
been adjudicated already as not vacant. Tex. Nat. Res. Code Ann. § 51.177(3) (Vernon Supp.
2003). These are defects that a preliminary examination would reveal. If the application is rejected,
the applicant loses nothing beyond a nominal filing fee. See Tex. Nat. Res. Code Ann. § 51.177(d)
(Vernon Supp. 2003). If the land is not adjudicated as not vacant, nothing prevents the applicant
from submitting a complete and correct application. Therefore, it would have been senseless for the
legislature to provide for an appeal of an application's rejection when refiling would serve the same
purpose and require less expense.

 Only after the acceptance of the application is the applicant required to submit a deposit to
pay for the investigation and any survey. Tex. Nat. Res. Code Ann. § 51.180 (Vernon Supp. 2003).
The $30,000 required of Byers in this case demonstrates just how substantial the deposit can be. 
Once the deposit is paid, the Commissioner may appoint a surveyor who must file a report of his
survey together with field notes and plat showing the results of the survey. Tex. Nat. Res. Code
Ann. § 51.182 (Vernon Supp. 2003). In this case, Goodson conducted such a survey for the agency. 
After the survey, the Commissioner acts on the application. Under the old law, section § 51.185(b)
of the Natural Resources Code, the Commissioner could not find that a vacancy existed unless a
hearing was held. Under the amended code, the Commissioner may, with or without a hearing,
proceed to a final order determining whether a vacancy exists. See Tex. Nat. Res. Code Ann.
§ 51.185(a) (Vernon Supp. 2003).

 Before the 2001 amendments, if the Commissioner decided the land in question was not
vacant, the Commissioner entered an order denying the application. Tex. Nat. Res. Code Ann. §
51.186(a) (Vernon 2000). The order contained "findings of fact, conclusions of law, and other
matters the commissioner consider[ed] appropriate." Id. The corresponding provision under the
amended code provides that if the Commissioner determines the land is not vacant, "the
commissioner shall endorse the file with the finding 'Not Vacant Land' and shall notify each
necessary party of the determination." Tex. Nat. Res. Code Ann. § 51.186. This finding is a final
appealable order. Id. 

 Probably the most significant change wrought by the 2001 amendments, and the change
which most affected the course of this litigation, is the provision that on appeal, the district court
shall conduct a de novo review of the Commissioner's final order. See Tex. Nat. Res. Code Ann.
§ 51.187(a). Previously, the review was under the substantial evidence rule, as provided by the
Administrative Procedure Act. See Tex. Nat. Res. Code Ann. § 51.186(d) (Vernon 2000).


Analysis


 Byers filed his only application on September 10, 1996. The application met the prevailing
statutory requisites and the agency accepted his application. The Commissioner estimated the cost
of the investigation and survey, and, based on the estimate, required Byers to deposit $30,000. Byers
paid the deposit. The surveyor identified the area claimed to be vacant, and conducted a survey. The
Commissioner concluded from this survey that no vacancy existed. Compelled after appeal and
remand to consider Byers' survey, the Commissioner reached the same conclusion. Byers appealed
and the district court remanded for an administrative hearing. Before a hearing could be held, the
legislature amended the procedure for handling a vacancy application. The legislature amended the
Natural Resources Code to provide that the decision to hold a hearing is solely within the discretion
of the Commissioner who also determines the scope of the hearing. Tex. Nat. Res. Code Ann. §
51.185(b) (Vernon 2003). The hearings are not contested case hearings, and are not subject to the
Administrative Procedure Act. See Tex. Nat. Res. Code Ann. § 51.185(a). Under the 2001
amendments, an applicant is entitled to de novo review of his application in the district court. Tex.
Nat. Res. Code Ann. § 51.188 (Vernon Supp. 2003). As Byers requested, the judge modified her
order to state that further processing was to be subject to the amended statute. Since the changes
were procedural, "further" steps after the effective date of the amendments were governed by the
new law, although past steps were not affected. See Regal Properties v. Donovitz, 479 S.W.2d 748,
751 (Tex. Civ. App.-Dallas 1972, writ ref'd n.r.e.).

 At this point, only two administrative steps remained: a non-contested case hearing if the
Commissioner chose to grant one, and a final decision. The court, in its order of remand, recognized
that the applicable statutes had been amended. Consequently, the court found that the hearing on
Byers' vacancy application was not to be a contested case hearing and that the Administrative
Procedure Act shall not apply to further processing of Byers' claim. The district court remanded the
matter to the agency for "further" processing pursuant to the recent amendments. A review of the
consideration of the December 19, 2000 order, considered in conjunction with the clarifying order,
shows that the district court's order directed the agency to proceed to a final determination. As Byers
contends, the court's order did not authorize the Commissioner to "assume for the purposes of
complying with the order that the application was filed on December 4, 2001." Moreover, the court
could not have intended what it could not have legally ordered. Further proceedings after the
amendments' effective date are controlled by the amended code, but past steps are unaffected. See
Regal Properties, 479 S.W.2d at 751.

 Nevertheless, the agency chose to proceed on the unwarranted assumption that the court's
order effectively nullified the steps completed before the amendments to the Natural Resources
Code. With this pretext, the agency proceeded to frame its real determination that the land in
question was not vacant land as an unappealable rejection of an application.

 It does not aid the agency's case that two of the three reasons given for the rejection are either
not statutory reasons for rejection or have no application to this case. The first reason-that the
application is subject to Byers'1996 application-is not now and never has been a statutory reason
for the rejection of an application. But it also illustrates the tortured treatment the application
received. Byers filed only one application. How the September 1996 application could be both filed
and accepted as well as subject to itself and therefore rejected remains unexplained.

 The third reason given to justify the attempted rejection was that "the application has material
omissions because it does not provide documentary proof of an assertion of good-faith claimant
status." However, this requirement did not enter the law until 2001 with the passage of the recent
amendments to this subchapter of the Natural Resources Code. When Byers' application was filed
and accepted five years earlier, the law did not require the filing of those documents. (3) The new
requirement cannot serve as a reason to "unaccept" the previously accepted application in order to
force Byers to re-run a gauntlet through which he had successfully passed five years before at
considerable expense. 

 The determinative ground given for the so-called "rejection" was essentially the same that
relied upon by the Commissioner in twice determining that no vacancy existed.


 A survey conducted by Jerry Goodson was accepted by the General Land Office; the survey
establishes that the vacant land described in the application does not exist on the ground.



This is the same Goodson survey paid for out of Byers' $30,000.00 deposit after his application had
been accepted. It is the same survey used twice before by the Commissioner in finding no vacancy
existed. That is the substance of the order at issue. We agree with Byers that, in the light of the
procedural history of this case, the determination that the claimed vacancy does not exist is
tantamount to a determination that the land claimed to be vacant is not vacant. Matters of form do
not control the nature of an order; "it is its character and function that determine its classification." 
Del Valle Independent Sch. Dist. v. Lopez, 845 S.W.2d 808, 809 (Tex. 1992); see also Mathes v.
Kelton, 569 S.W.2d 876, 878 n.3 (Tex. 1978); Ferguson v. Naylor, 860 S.W.2d 123, 129 (Tex.
App.-Amarillo 1993, writ denied). If the substance of a decree amounts to a final judgment,
incidental labels are not controlling. See Brines v. McIlhaney, 596 S.W.2d 519, 524 (Tex. 1980). 
Therefore, it does not alter the matter that the Commissioner failed to perform the purely ministerial
act of endorsing the file "Not Vacant Land." Accordingly, we sustain Byers' issues one through
seven. 

 In his eighth issue, Byers contends that the trial court erred in admitting certain exhibits over
his objection. Because of our disposition of Byers' first seven issues, we need not address his eighth
issue. Tex. R. App. P. 47.1.


Conclusion


 This appeal was last abated and the application remanded to the agency for a specific
purpose-a hearing. At that point in the process, only one of two outcomes was possible: a finding
that a vacancy exists or a determination of "No Vacancy." The district court cannot be ousted of its
jurisdiction by a label. Although styled a rejection of an application, the agency's finding was a
determination of "No Vacancy."

 The judgment of the trial court is reversed and the cause is remanded to the trial court for
trial de novo.


 BILL BASS 

 Justice



Opinion delivered July 31, 2003.

Panel consisted of Worthen, C.J., Griffith, J., and Bass, Retired Justice, Twelfth Court of Appeals, Tyler, sitting by
assignment.















(PUBLISH)
1. The amended statutes are codified at Tex. Nat. Res. Code Ann. § 51.171-51.192 (Vernon Supp. 2003).
2. Byers' first seven issues relate to jurisdiction, and we address those issues together.
3. Moreover, section 51.189 of the current law provides that "[t]he court may review the Commissioner's
declaration of good faith claimant status only in conjunction with a review of a final order determining that a vacancy
exists." Since the order of March 5 does not find that a vacancy exists, but finds that it does not exist, there can be
no review of the claim of good-faith claimant status and the omission of the documentation cited would appear
immaterial.